IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LORI A. DAVIS, §
§
Plaintiff, §
§
VS. §   NO. 4:08-CV-625-A
§
FARMERS INSURANCE EXCHANGE, §
§
Defendant. §

MEMORANDUM OPINION
and
ORDER

On February 5, 2009, defendant, Farmers Insurance Exchange,

moved for summary judgment on all claims asserted by plaintiff,

Lori A. Davis, in this action. Having considered the motion,

plaintiff's response[1], defendant's reply, the summary judgment

record[2], and the applicable legal authorities, the court

concludes that the motion should be granted.

---

[1]The court notes that many of plaintiff's appendix cites do not contain the evidence cited in the response as supporting her contentions. In some instances, the court located the evidence through other of plaintiff's citations or those in defendant's appendix. However, the court is not inclined to peruse all 162 pages of plaintiff's appendix in search of evidence to support her contentions. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)("Judges are not like pigs, hunting for truffles buried in briefs.").

[2]In her response, plaintiff objects to certain portions of defendant's summary judgment evidence. The court will accord such evidence the weight to which it is entitled.

I.

## Plaintiff's Claims

Plaintiff initiated this action on June 26, 2008, and filed her first amended complaint on December 3, 2008, alleging that she was discharged in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA"). Plaintiff also asserts a state law claim for civil conspiracy.

II.

## The Motion for Summary Judgment

Defendant seeks summary judgment on all of plaintiff's claims. Specifically, defendant contends that plaintiff cannot sustain her burden to establish a prima facie case of unlawful discrimination based on age or gender, but that in any event, defendant had a legitimate, non-discriminatory reason for plaintiff's termination. Defendant further argues that plaintiff cannot establish such reason was actually pretext for discrimination or that her age or gender were motivating factors in her termination. Defendant also seeks summary judgment as to plaintiff's claim of civil conspiracy.

2

III.

Facts

The facts set forth below are undisputed in the summary
judgment record:

Plaintiff originally worked for defendant from June 1982
through August 1994, at which time she resigned voluntarily.
Defendant rehired her in May 1996. At the time of her
termination, plaintiff was a senior claims representative
assigned to defendant's office in Grand Prairie, Texas, in its
National Theft Unit, reporting to Mark Osborn ("Osborn"). At the
time of the events forming the basis of her termination,
plaintiff worked in defendant's Dallas Property Unit, where she
was supervised by Jamie Donovan ("Donovan").

Defendant has in place two policies pertinent to plaintiff's
claims: an Acceptance of Gifts and Gratuities policy ("Gifts and
Gratuities Policy"), and an ethics policy (collectively, the
"Policies"). The Gifts and Gratuities Policy states in pertinent
part:

....

One important aspect of conflict of interest is the
acceptance of gifts and gratuities. The following
statement clarifies the organization's policy on the
acceptance of gifts and gratuities from any person or

3

entity with which we do business or are contemplating
doing business....

Employees are not permitted, under any circumstances,
to accept a cash gift or gratuity in any amount or in
any form including, but not limited to gift
certificates, financial concessions or discounts.
Investment opportunities or loans are likewise
prohibited, except those from bona fide financial
institutions.

Acceptance of non-cash gifts and special concessions of
any amount from any entity (not part of the Farmers
Group of Companies or the Zurich Financial Services
organization) are not generally acceptable. The only
exceptions are infrequent acceptance of perishable food
items, if returning them is impractical, or items of a
promotional or advertising nature, if the market value
is less than $25.

Employees should not normally accept invitations to
events that are social or recreational. From time to
time, however, there will be situations in the normal
course of business where a certain employee's
attendance is in Farmers' best interests. Participation
in such events is limited to those where, in fact,
business related issues are the primary purpose.
....

Def.'s App. at 25. Defendant's ethics policy contains an

identical provision.

On October 31, 2007, Joni Sekander ("Sekander"), a human

resources advisor for defendant, received an email from Barry

Helton ("Helton"), defendant's Territory Manager Texas Property

Claims, advising that he had received two anonymous letters

suggesting that unnamed employees of defendant had been

4

"participating in freebies" from two of defendant's vendors, including Servpro. Def. Br. at 5. Helton later forwarded to Sekander the two anonymous letters and also informed her that he had learned that plaintiff and another employee, Vicki Jacob ("Jacob"), also a senior claims representative, had attended a fishing tournament sponsored by Servpro owner Bryan Stone ("Stone"). Sekander reported this information to her supervisor, Meta Pugh, the human resources business partner for defendant. Pugh and Sekander agreed that Sekander would investigate the allegations, and that she would apprise Pugh of her findings.

As a result of her conversation with Helton, Sekander began her investigation by contacting Stone on November 6, 2007, to discuss the fishing tournament. According to Stone, Servpro and three other vendors hosted a fishing tournament on Lake Texoma in Denison, Texas, on May 5, 2007. The vendors provided hotel accommodations for participants who wished to spend the night at the lake prior to the tournament. During the investigation, Stone told Sekander he estimated the cost of the event at approximately $200 per person. The vendors identified potential invitees for the tournament; Stone personally invited adjusters from whom he had received business referrals in the past, including plaintiff and Jacob. Stone informed Sekander that another of defendant's

employees, Steve Payne ("Payne"), had attended the fishing tournament, although Stone was not sure who invited him. According to Stone, plaintiff, Jacob, and Payne had all stayed at the hotel the night before the tournament. Stone informed Sekander that Servpro paid all of the expenses for plaintiff and Jacob to attend the tournament, including their hotel room, but paid nothing for Payne's participation.

Upon further questioning by Sekander, Stone reported that Servpro had also paid the entry fees for plaintiff and Jacob at a golf tournament in April 2007, at a cost of $110 each; a portion of the entry fees were donated to charity. Stone provided Sekander with documentation showing his payment of the entry fees. Four of defendant's adjusters, including Payne, also participated in an October 2007 golf tournament hosted by Servpro, but each paid his own entry fees, as confirmed by documentation Stone provided.

On November 6, 2007, Sekander questioned plaintiff about Servpro's April 2007 golf tournament and May 2007 fishing tournament. Plaintiff acknowledged participating in both events and admitted that Servpro paid her entry fees for both. Although admitting her awareness of defendant's Policies, plaintiff denied she had engaged in any wrongdoing by participating in the fishing

tournament, as she believed Servpro was one of defendant's "preferred" vendors.[3] Plaintiff also admitted that Servpro had paid her entry fees for the April 2007 golf tournament, believing this was acceptable since a portion of the money went to charity.

On November 6, 2007, Sekander also spoke with Jacob, who likewise admitted that she had participated, at Servpro's expense, in both the April 2007 golf tournament and the May 2007 fishing tournament. Like plaintiff, Jacob admitted her knowledge of defendant's Policies, but also thought her actions were acceptable since she believed Servpro was a preferred vendor and part of the golf tournament money went to charity.

Sekander next interviewed Payne, who also admitted his participation in the April 2007 golf tournament and May 2007 fishing tournament. Unlike plaintiff and Jacob, however, Payne maintained that he had paid his own entry fee for the golf tournament, and paid $120 cash to the fishing guide for he and his brother to participate in the fishing tournament. Payne told Sekander that he had specifically asked, and received confirmation, that the amount he paid covered the entire cost of

---

[3]Defendant claims that Servpro is an "optional" vendor; plaintiff persists throughout her response brief in calling Servpro a "preferred" vendor. As defendant's Policies make no distinction between preferred and optional vendors, resolution of this difference is not pertinent to defendant's motion.

the fishing tournament. Payne also acknowledged that he was aware of defendant's Policies and so was careful to pay for everything himself. Payne also indicated he would provide a copy of his cancelled check for the April 2007 golf tournament.

When Sekander later called Payne to follow up on the investigation, he claimed he had paid Frank Hancock ("Hancock"), another vendor, the $120 cash for the fishing tournament, rather than the fishing guide as he had originally claimed. Sekander contacted Payne again on November 9, 2007, at which time he claimed he was still attempting to obtain the copy of his canceled check.

As of November 9, 2007, Sekander concluded that plaintiff and Jacob had violated defendant's Policies by allowing Servpro to pay their entry fees for the April 2007 golf tournament and May 2007 fishing tournament. She did not at that time conclude that Payne had similarly violated defendant's Policies, as he continued to insist that he had paid his own way for both events, and Sekander had received no evidence to the contrary, although she was still waiting for Payne to provide the requested documentation. Sekander summarized the results of the investigation in a written report and emailed the report to Pugh on November 14, 2007. On November 20, 2007, Payne provided

8

Sekander with documentation that satisfied her he had paid his own entry fees for the April 2007 and October 2007 golf tournaments, which she forwarded to Pugh. Sekander also spoke with Hancock, who confirmed that Payne paid for himself and his brother to participate in the May 2007 fishing tournament; Sekander also shared this information with Pugh.

Pugh subsequently communicated the results of the investigation to Osborn and Donovan. Osborn was plaintiff's supervisor at the time Sekander conducted her investigation, while Donovan supervised plaintiff at the time she attended the April 2007 golf tournament and the May 2007 fishing tournament. Pugh told Osborn about the anonymous letters that had instigated the investigation, and about plaintiff's admission that Servpro paid her entry fees for the April 2007 golf tournament and the May 2007 fishing tournament. Pugh confirmed that plaintiff had received several copies of defendant's Policies during the course of her employment. Although Pugh told Osborn that other employees were involved in the investigation, she provided no details, as none of the other employees worked for Osborn. Osborn and Pugh agreed that plaintiff's actions justified termination of her employment.

Because plaintiff reported to Donovan during the time she attended the golf and fishing tournaments at issue, Pugh also provided Donovan the same information about plaintiff that she provided to Osborn. Because Osborn had only supervised plaintiff a short time, he contacted Donovan to discuss the investigation and appropriate discipline. Both Osborn and Donovan agreed that discharge was an appropriate disciplinary action under the circumstances. As plaintiff's supervisor, Osborn made the final decision to terminate plaintiff's employment. On December 4, 2007, Osborn gave plaintiff a termination memorandum, effective immediately. Jacob was also terminated; Payne was not.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a

10

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A.   Plaintiff's Claims of Gender and Age Discrimination

The court evaluates plaintiff's Title VII and ADEA discrimination claims under the same general burden-shifting framework originally set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). See Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). This framework, in turn, requires plaintiff first to make out a prima facie case. See id.; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If plaintiff makes out a prima facie case, a presumption of discrimination arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions. See Rachid, 376 F.3d at 312; McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). If defendant meets this burden of production, the plaintiff must "offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the

12

reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative)." Rachid, 376 F.3d at 312 (internal citations and quotation marks omitted).

As plaintiff has offered no direct evidence of gender or age discrimination, she must establish a prima facie case of discrimination on the basis of gender by showing that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4)  was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably. See Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001). The first three elements of a prima facie case of gender discrimination under Title VII and of age discrimination under the ADEA are identical. See Meinecke v. H & R Block, 66 F.3d 77, 83 (5th Cir. 1995). As to the fourth element of a prima facie case of age discrimination, the plaintiff must show that "[s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." Id. (internal quotations omitted).

Defendant does not dispute that plaintiff has satisfied the first three elements of her prima facie case of age and gender discrimination.  However, defendant maintains, and the court agrees, that plaintiff has not adduced evidence in support of the fourth element, namely, that similarly situated individuals outside of her protected class were treated more favorably.[4] Specifically, plaintiff has failed to show that she was treated differently when compared to other employees who were similarly situated.

To satisfy the "similarly situated" requirement, the circumstances of the plaintiff and her comparator must be more than similar, they must be "nearly identical." Berquist v. Washington Mut. Bank, 500 F.3d 344, 353 (5th Cir. 2007). The "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decisions," taking into consideration such factors as the employees' job titles, work location with the company, supervisors, and alleged misconduct. Perez v. Texas Dept. of Criminal Justice, 395 F.3d 206, 210 (5th Cir. 2004); see

---

[4]Although plaintiff was replaced by a male-- an individual outside her protected class-- it is undisputed that he was over forty years of age.

also <u>Wyvill v. United Cos. Life Ins. Co.</u>, 212 F.3d 296, 302 (5th Cir. 2000).

Here, plaintiff points to only one comparator--Payne--to establish the fourth element of her <u>prima facie</u> case. Plaintiff contends Payne is similarly situated to her because he attended the April 2007 golf tournament and the May 2007 fishing tournament but was not terminated. Plaintiff misses the mark: from defendant's perspective, plaintiff and Payne were not similarly situated. Plaintiff readily admitted that Servpro paid for her entry fees into the golf and fishing tournaments. In contrast, Payne at all times denied Servpro paid his entry fees for these events and instead maintained that he paid his own way. Defendant, through its investigation, was satisfied that such was the case. The issue of whether a vendor paid the entry fees for an employee to participate in the golf and fishing tournaments, or whether the employee paid those fees out of his or her own pocket, was the critical factor defendant considered in determining the disciplinary action to be taken. Accordingly, plaintiff's and Payne's conduct was not "nearly identical" from defendant's perspective. See <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 221 (5th Cir. 2001)("[T]he conduct at issue is not nearly identical when the difference between the plaintiff's

15

conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer."); see also Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980) (employees not similarly situated where "disparity of punishment resulted from a difference in conduct rather than [discriminatory] motivation.").

Further, it is undisputed that different supervisors made the final termination decision regarding plaintiff and Payne: Osborne made the termination decision as to plaintiff, but he had no input into disciplinary action taken towards Payne. On these facts, plaintiff and Payne were not similarly situated. See, e.g., Wyvill, 212 F.3d at 302-303; Little v. Republic Refining Co., Ltd., 924 F.2d 93, 96-97 (5th Cir. 1991).

Plaintiff has likewise failed to establish the fourth element of her prima facie case of age discrimination. Evidence provided by plaintiff establishes that the individual who replaced her was over forty years of age. Plaintiff does not allege that any of defendant's employees ever made derogatory comments regarding her age. Plaintiff offers no competent summary judgment evidence, other than her subjective belief, that she was otherwise terminated because of her age, and such is insufficient

to create an inference of discriminatory intent. See Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 152 (5th Cir. 1995).

Even if the court accepts that plaintiff has established a prima facie case, she has still adduced no evidence of pretext. Defendant's articulated reason for plaintiff's termination--her violation of the Policies by allowing one of its vendors to pay for her entry fees in the April 2007 golf tournament and the May 2007 fishing tournament--is a legitimate, non-discriminatory reason for discharging an employee. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).

Plaintiff attempts to prove pretext first by arguing that she did not violate defendant's Policies. In support, plaintiff contends that Servpro has long provided defendant's employees with free items such as food, continuing education classes, "pens, sponges, and transportation," allegedly in violation of the Policies, without disciplinary action against the receiving employees. Pl.'s App. at 5. Such does not establish that defendant's reason for her termination was a pretext for age or gender discrimination.[5] Plaintiff does not allege that defendant

---

[5]The Policies appear to exempt such items. For example, they exempt "perishable food items...or items of a promotional or advertising nature, if the market value is less than $25." Def.'s App. at 25, 30. The Policies also acknowledge that "there will be situations in the normal course of business where a certain employee's attendance is in [defendant's] best interests," when "business related issues are the primary purpose." Id. The promotional items and continuing education classes cited by plaintiff could easily fit within these exceptions.

terminated her employment for accepting food, continuing education classes, pens, sponges, or transportation while other employees were retained, nor does she identify any employee who accepted such items who also allowed a vendor to pay her entry fees into a golf tournament and fishing tournament who was not also terminated.

Plaintiff also attempts to prove pretext by assailing the quality and results of defendant's investigation, and she repeatedly asserts that in her opinion, she did not violate the Policies, apparently because: she believed Servpro to be a preferred vendor; the proceeds from the golf tournament were given to charity; and her coworker, Jacob, also did not believe she violated the Policies. Neither plaintiff's opinion of defendant's investigation, nor her opinion of whether or not her conduct violated defendant's Policies, is sufficient to create a genuine issue of material fact as to pretext. In investigating an employee's alleged violation of a work rule, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." Mayberry, 55 F.3d at 1091. The critical inquiry "is limited to whether the employer believed the allegation in good faith and whether the decision to discharge

the employee was based on that belief." Waggoner v. City of Garland, 987 F.2d 1160, 1165-66 (5th Cir. 1993); see also Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002). Thus, even if defendant reached an erroneous conclusion regarding plaintiff's, or Payne's, violation of its Policies, plaintiff has adduced nothing as would show that defendant did not in good faith believe in that conclusion in reaching its decision to terminate plaintiff's employment.

Plaintiff also attempts to create a fact issue on the point of whether or not Payne paid the full cost of the fishing tournament, or received a discount in violation of the Policies. Although Stone apparently told Sekander during her investigation that the cost of the fishing tournament was approximately $200 per person, his later testimony indicated he had no clear idea of the actual cost per person. Defendant, during the course of its investigation, was satisfied by the information it received that Payne paid his own entry fee for the fishing tournament.[6] As discussed above, whether or not defendant, in its investigation, reached an erroneous conclusion does not, in itself, create an

---

[6]Throughout her response, plaintiff asserts that Payne paid nothing for entry into the May 2007 fishing tournament, and offers her own and Jacob's declarations in support. Jacob offers no factual support whatsoever for her assertion. Plaintiff claims to have obtained this information from unspecified documents and a conversation with Payne. However, plaintiff never claims Payne told her he did not pay for his entry fees, and in his deposition he testified to the contrary.

19

issue of material fact as to pretext or whether discrimination was a motivating factor in the decision to terminate plaintiff. See Waggoner, 987 F.2d at 1165-66; see also Sandstad, 309 F.3d at 899; Little, 924 F.3d at 97.

Finally, plaintiff offers as proof of pretext the conclusory assertion that she has "observed a routine or pattern that [defendant] in the BCO N8 office has been getting rid of their over forty (40) years of age workers and replacing them with workers under forty (40)." Pl.'s App. at 6. Plaintiff offers no factual or evidentiary support for this conclusory allegation, nor does she provide the name of even one such employee over forty who was replaced by an individual under forty.[7] Plaintiff's conclusory assertions and unsubstantiated subjective beliefs and opinions, unsupported by any summary judgment evidence, cannot defeat summary judgment. See, e.g., Forsyth, 19 F.3d at 1533; Galindo v. Precision American Corp., 754 F.2d 1212, 1216 (5th Cir. 1985).

Plaintiff has failed to adduce anything to show that defendant gave any account to plaintiff's age or gender in making

---

[7]Evidence provided by plaintiff contradicts this assertion: the individual who replaced plaintiff was over forty years of age.

20

the termination decision.[8] Whether or not defendant made mistakes or reached erroneous conclusions in its investigation of the April 2007 golf tournament and May 2007 fishing tournament, plaintiff has offered no evidence that discrimination was the real reason for, or a motivating factor in, her termination. Accordingly, defendant is entitled to summary judgment on plaintiff's claims of gender and age discrimination.

B.    Plaintiff's Claim of Civil Conspiracy

To prevail on her claim of civil conspiracy, plaintiff must show that defendant is liable to her for an underlying tort. See Meadows v. Hartford Life Ins. Co., 492 F.3d 634, 640 (5th Cir. 2007). As the court finds that plaintiff's claims of age and gender discrimination should be dismissed, there is nothing on which the civil conspiracy claim may be grounded, and the court finds such claim should also be dismissed. See id.

VI.

Order

For the reasons discussed above, the court concludes that defendant's motion for summary judgment should be granted.

---

[8]Both Osborn and Donovan disavowed any knowledge of plaintiff's age.

Therefore,

    The court ORDERS that all claims and causes of action asserted by plaintiff, Lori A. Davis, against defendant, Farmers Insurance Exchange, be, and are hereby, dismissed with prejudice.

    SIGNED April _17_, 2009.

                                   JOHN MCBRYDE
                                   United States District Judge